## Appeal of THE BURLINGTON OVERALL MANUFACTURING CO.

Docket No. 2106.   Submitted April 23, 1925.   Decided June 24, 1925.

*Theodore B. Benson, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

### Before IVINS and MORRIS.

This appeal is from a deficiency in income and profits taxes for the year 1919 in the amount of $1,667.22. The deficiency arose from the action of the Commissioner in eliminating from invested capital certain amounts which he considered borrowed capital. The appeal was submitted on a stipulation of facts. The stipulation contains some repetitions and many inconsistent and ambiguous statements, but for lack of any other evidence the Board is compelled to adopt it in its

FINDINGS OF FACT.

The stipulation above mentioned reads:

Now comes the Commissioner of Internal Revenue, by his attorney, A. W. Gregg, Solicitor of Internal Revenue, and the appellant, the Burlington Overall Manufacturing Company, of Kansas City, Missouri, by its authorized representative Theodore B. Benson, and agrees to the following stipulation of facts to be submitted as evidence at the hearing of this appeal.

In the year 1903 Charles Kabaker and Hyman Naman commenced the business of jobbers in work clothes, etc., as partners, operating the Kabaker-Naman Company, a copartnership, to which partnership Nick Abramson was later admitted. In the year 1913 the business of manufacturing overalls and work clothing was started by said partnership under the name of the Burlington Overall Manufacturing Company, and in January, 1914, the business of said partnership was moved from Burlington, Iowa, to Kansas City, Missouri, and incorporated under the laws of the State of Missouri. Charles Kabaker, Hyman Naman, and Nick Abramson were brothers-in-law, and as partners, were owners of the partnership business and became the sole stockholders of the business of the corporation. No minutes were kept by the corporation nor certificates of capital stock were issued, nor were corporation accounts ever opened on the books until some time during 1918. The books originally used by the copartnership were continued as the books of the corporation after incorporation.

In the business conducted by the partnership, each partner was allowed a reasonable amount as a drawing account and at the end of each year the profits of the business in excess of his drawing account were credited to the respective partners "investment account." This policy and practice was kept up and like entries were made on the books after the business of the copartnership was incorporated as aforesaid.

When the business of manufacturing overalls was started in Burlington, Iowa, as a copartnership, the capital for the conduct of such business was contributed by Charles Kabaker and Hyman Naman and there was credited on the books of the copartnership to the "investment account" of the respective partners $19,322.30 to Charles Kabaker and $19,322.31 to Hyman Naman. It

was agreed between the partners that each of them should have a reasonable drawing account, which agreement was continued in effect after the partnership business was incorporated. This agreement was in force from the beginning of the business of the copartnership on July 28, 1913, and continued in force to the end of the year 1919. It was further agreed between the partners who afterwards became the stockholders of the appellant after its incorporation, that the profits realized in the operation of the business over and above the amounts drawn out by the partners and stockholders should be left in the treasury and charged on the books to the surplus or investments accounts of the respective partners or stockholders.

At the close of the year 1913 the shares of each of the partners in the net profits of the copartnership after deducting his drawing account, were added to his investment account. This method of bookkeeping was followed until the end of the year 1916, after which time and until the end of the year 1919, the excess of the profits of the business over and above the drawing account of the respective stockholders, was added to the surplus account of each stockholder in proportion to this stockholding interest. From the beginning of the business as a partnership until the end of the year 1916, the amounts originally invested in the business by the partners, and his respective share of the profits of the business, were carried on the books of the partnership and subsequently the corporation under the head of the respective partner or shareholder's "investment account." In the beginning of the year 1917, shares of capital stock were issued, and a part of each shareholder's "investment account" was transferred to capital stock out of the corporation and the balance was transferred to the respective shareholder's surplus account. The balance sheet of the corporation at the beginning of the year 1917 showed two items of liability as follows:

Capital _____ $50,000.00

Surplus paid in—
    By C. Kabaker_____ $23,673.56
    By H. Naman_____ 16,698.44
    By N. Abramson_____ 3,653.79

      Total _____ $44,025.79
                                         $44,025.79

At the end of the year 1915, the capital employed by the partnership under the name and style of Kabaker-Naman Company was transferred to the corporation, Burlington Overall Manufacturing Company, and the investment accounts of the respective partners who were at that time shareholders in the Burlington Overall Manufacturing Company were increased by the following entries:

Charles Kabaker—Investment Account Jan. 5, 1916, Tsfr. K–N Co__ $16,828.56
Hyman Naman—Investment Account Jan. 5, 1916, Tsfr. K–N Co_____ 15,881.29
Nick Abramson—Investment Account Dec. 30, 1916, Tsfr. K–N Co__ 35.10

On the books of the business there was carried an account known as loan accounts, in which account the respective shareholders were credited with the sums actually lent by him to the corporation. These accounts were entirely separate from the investment account, or surplus account of the respective shareholders. Interest was paid by the corporation on the investment accounts of the respective shareholders for the years 1915, 1916 and 1917. During these years the corporation had operated without having issued shares of capital stock during which time no dividends were declared or paid as such. In the year 1918, the revenue agent made an examination of the books of the corpora-

tion and disallowed the interest payments as a deduction for ordinary and necessary expense, holding that such payments should be more properly considered as the payment of dividends. During the year 1918 and 1919 no interest was paid by the corporation on the investment accounts to the respective shareholders, but during all the years interest was paid on the loan accounts. The respective members of the partnership and subsequently shareholders of the corporation reported the full amount of their respective shares in the profits of the business claimed on the books of the corporation to their investment accounts or surplus accounts, as aforesaid, in their respective individual income tax returns and paid the normal and surtax thereon. The members of the partnership and subsequently shareholders in the corporation had entered into a mutual agreement amongst themselves that the earnings and profits of the partnership and subsequently the corporation, over and above their respective drawing accounts, should remain in the business of the partnership and subsequently the corporation, and not be withdrawn by them, and none of the surplus charged on the books of the corporation as aforesaid was ever withdrawn from the business by the respective partners or shareholders.

On January 2, 1920, the capital of the corporation was increased from $50,000 to $100,000 and entries were made on the books of the corporation to close out the shareholders' paid in surplus accounts by the following transfers.

Charles Kabaker:
 Trsfd. to capital stock account_____ $20,000.00
 Trsfd. to bills payable_____ 39,923.76
Hyman Naman:
 Trsfd. to capital stock account_____ 20,000.00
 Trsfd. to bills payable_____ 46,953.97
Nick Abramson:
 Trsfd. to capital stock account_____ 10,000.00
 Trsfd. to bills payable_____ 5,397.03

On January 26, 1920, the following resolution was passed by the stockholders of the appellant and spread of record on its minutes, which resolution reads as follows:

" Resolved: That after proper credit for building has been given, a transfer from the three individual surplus accounts and loan accounts of Charles Kabaker, Hyman Naman, and Nick Abramson, should be made to capital stock account, covering purchase of new stock. For any and all net balances after proper transfer of these three accounts, the Burlington Overall Manufacturing Company will give notes, drawing 8% interest to each individual for balance as shown by the books of the company on January 2nd, 1920. The notes to be paid in the following manner: Sums of any amount which can be spared by the company from time to time without crippling the finances of the company; also, any moneys drawn on personal accounts, or charged to personal accounts where personal bills are paid by the company shall be applied against this indebtedness. Interest shall be paid quarterly on the first day of April, July, October, and January each year, interest to cease on amounts paid from time to time on date payment was made."

Under this resolution the " surplus accounts, investment accounts, and loan accounts " of the respective partners and shareholders were closed out on the books of the company by applying a part of these accounts to the purchase of new stock in the corporation and the corporation executed notes bearing 8% interest to each of the individual shareholders for the balance of the respective accounts.

There are attached hereto as Exhibits A, B, C, D and E transcripts from the taxpayer's books, which disclose in detail the manner in which the investment loan, capital stock and surplus accounts were carried on the books of the corporation.

It is agreed that the foregoing stipulation of facts may be submitted as all of the evidence in this appeal.

The Board does not regard the exhibits annexed to the stipulation as a necessary part of its findings.

### DECISION.

The deficiency should be recomputed, including in invested capital the amounts of the stockholders' investment or surplus accounts. Final determination will be settled on 15 days' notice, in accordance with Rule 50.